IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2007

**STATE OF TENNESSEE v. TIMOTHY RAY AZBILL**

**Direct Appeal from the Circuit Court for Decatur County**
**No. 06-CR-253      C. Creed McGinley, Judge**

---

**No. W2007-00086-CCA-R3-CD  - Filed December 12, 2007**

---

The defendant, Timothy Ray Azbill, was found guilty by a Decatur County jury of aggravated burglary, rape of a child, and especially aggravated kidnapping, and received an effective sentence of twenty-five years in the Department of Correction.  The defendant challenges the sufficiency of the evidence supporting his convictions and the trial court's application of sentencing enhancement factors.  After review, we conclude that the defendant's claims are without merit and affirm the judgments.  However, we additionally conclude that, as to the convictions for rape of a child and especially aggravated kidnapping, the court began at the midpoint of the range, rather than the minimum as required, and, therefore, remand for resentencing as to those two offenses.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded for Resentencing**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Richard W. DeBerry, Assistant Public Defender, for the appellant, Timothy Ray Azbill.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Hansel Jay McCadams, District Attorney General; and Jerry W. Wallace and Ed McDaniel, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The victim, M.L.,[1] testified at trial that after she went to sleep on October 26, 2005, the defendant entered her bedroom, woke her up, and told her that her mother had won ten thousand

---

[1] M.L was eleven years old at the time of the incident.  It is our policy to refer to minor victims by their initials.

dollars. The defendant then took M.L. from her bedroom, covered her mouth as they left the house, and shoved her into his car. M.L. testified that the defendant drove to a nearby church, where he punched her in the jaw and attempted to strangle her. She said the defendant held a screwdriver to her throat and told her that if she told anyone about this incident that he would kill her and her mother. She initially testified that the defendant made her take her clothes off, but did not do anything to her after that. The defendant then took M.L. home, and she ran into the house and told her mother that the defendant had raped her. Later, during direct examination, M.L. testified that after the defendant pulled her clothes off, he made her sit on top of him and placed something inside her body.

On cross-examination, M.L. testified that the defendant had been to her house twelve or thirteen times to visit her mother and that she had ridden in his car three or four times and attended a sleepover at his house without incident. She testified that she had never heard her mother talk about having a drug problem and had never seen the defendant and her mother use drugs. M.L. said that she did not hear her mother talk about being mad at the defendant shortly before the night of the incident.

The victim's mother, E.L., testified that she went to bed around the same time as her daughter on the night of the incident. At around 1:00 a.m., her daughter came home crying and told her that the defendant had raped her. E.L. promptly called the police, who transported her and M.L. to the hospital. On cross-examination, E.L. testified that she had known the defendant for approximately six months and that M.L. had previously stayed overnight with the defendant and his girlfriend. E.L. said that on the night of the incident she left the door to her home unlocked and did not hear anyone enter the home. She admitted that she had used illegal drugs with the defendant but denied they had argued about drugs. She denied purchasing drugs with the defendant on the day of the incident and denied that he had cheated her out of drugs that day. On redirect examination, E.L. testified that she did not give the defendant permission to enter her home or take her daughter on the night of the incident.

Sergeant Tony Weber of the Decatur County Sheriff's Department testified that he arrived at E.L's home at around 1:30 a.m. on October 27, 2005. E.L. told him that the defendant had raped her daughter. He then drove E.L. and M.L. to the hospital and asked that a rape kit examination be performed. Sergeant Weber acknowledged that the results of the rape kit were negative for the presence of semen. Sergeant Weber said that a pastry wrapper with M.L.'s fingerprint was recovered from the defendant's car.

Kimberly Britt, a registered nurse at Decatur County General Hospital, examined M.L. on the morning of October 27, 2005. Ms. Britt asked M.L. what happened to her and she responded, "He hit me on my eye and nose, and then he made me sit on top of him," and said that something went inside of her. Britt observed that M.L. had a small abrasion on the left side of her nose, a reddened area to the left of her eye, and bruises on her neck, back, and chest. In Britt's opinion, these injuries appeared to have been inflicted "within a couple of hours." She testified that M.L.

appeared a bit nervous but relatively calm. On cross-examination, she acknowledged that she could not tell by looking at a bruise whether it was intentionally or accidentally inflicted.

Dr. Thomas Hamilton, who treated M.L. at Decatur County General Hospital, observed that she had slight pain in her neck, abrasions to the left side of her nose and to the left of her eye, and a small bruise on the right side of her neck. Dr. Hamilton performed a vaginal exam on M.L., which revealed moderate irritation of the labia and the external vaginal wall and a serous sequence extruding from the vagina.[2] In his opinion "there was a pretty good possibility that [M.L.] had been violated." On cross-examination, Dr. Hamilton testified that he found no tears or lacerations in M.L.'s vagina.

Barbara Bush, the defendant's girlfriend, testified that she had known the defendant since Mother's Day 2005. On October 27, 2005, the defendant picked her up around 1:45 a.m., and she accompanied him to his mother's house in Camden. Ms. Bush said the defendant appeared normal to her that morning and was in a hurry, as he always is.

The defendant testified that he did not do what the victim had accused him of doing to her. He said that he arrived at E.L.'s house around 10:30 p.m. on the night of the incident and smoked drugs with her. He testified that once they were "high," they began kissing and E.L. performed oral sex on him. The defendant said he then asked E.L. to buy more drugs for him. E.L. wanted to wait until morning, but the defendant could not wait that long, so he convinced E.L. to wake M.L., bring her with them, and purchase the drugs immediately. The defendant said he took E.L. to a house in Scotts Hill, where she purchased two "eight balls" of methamphetamine while he waited in the car with M.L. When E.L. returned, she passed the drugs to the defendant through the car window, and he took the drugs and drove off without paying her. The defendant testified that he then took M.L. home, picked up Ms. Bush, stopped at a gas station, and drove to his mother's house. He denied sneaking M.L. out of the house or telling her that her mother had won a prize and reiterated that E.L. woke M.L. up and put her in the car. The defendant opined that E.L. and M.L. were offering false testimony because E.L. was angry with him for taking the methamphetamine without paying for it.

Shirley Hensley, the defendant's mother, and Crissy Fuller, his sister, testified about his reputation for truthfulness. Ms. Hensley testified that he had always been truthful to her. She said, "There have been times that he'd say, 'Mom, don't ask me because I'm not telling you,' but he's never looked me in the eye and told me a lie." Fuller testified that the defendant had always told her the truth, whether it hurt him or not.

The jury found the defendant guilty of all charges. With respect to the aggravated burglary conviction, the trial court sentenced the defendant as a Range II, multiple offender to eight years. For the rape of a child and especially aggravated kidnapping convictions, the court sentenced the defendant as a Range I, violent offender to twenty-five years for each conviction. All of the

---

[2] Dr. Hamilton explained that a serous sequence is "a clear mucous type substance with a little reddish tint."

defendant's sentences were ordered to be served concurrently but consecutively to a prior Carroll County sentence.

## ANALYSIS

The defendant presents two issues for our review. He argues that the evidence was insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt, and that the trial court incorrectly applied three of the four sentencing enhancement factors. The State responds that the evidence was sufficient and that the defendant's sentence is not excessive and does not violate the principles of sentencing. We find that both of the defendant's issues are without merit and affirm his convictions. However, we notice plain error committed by the trial court at sentencing and remand for a new sentencing hearing.

### I. Sufficiency of the Evidence

Where sufficiency of the convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789; see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn.1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Aggravated Burglary

A person commits aggravated burglary who, without the effective consent of the property owner, enters a habitation not open to the public with intent to commit a felony, theft, or assault. Tenn. Code Ann. §§ 39-14-402, -403 (2003). A habitation includes any structure designed or adapted for the overnight accommodation of persons. Tenn. Code Ann. § 39-14-401(1)(A). The State introduced testimony at trial that the defendant entered E.L.'s home, removed M.L., and raped her. E.L. testified that she did not give the defendant permission to enter her home or take M.L. The jury could reasonably infer that the defendant intended to commit a felony when he entered E.L's home. Viewed in the light most favorable to the State, the evidence was sufficient for a rational trier of fact to find that the defendant committed aggravated burglary.

## B. Rape of a Child

Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is less than thirteen years of age. Tenn. Code Ann. § 39-13-522(a) (2003). M.L. testified that the defendant made her take her clothes off and sit on top of him, and "place[d] something" inside her body. Dr. Hamilton testified that M.L. displayed moderate irritation of her labia and vaginal wall, and a serous sequence extruded from her vagina. It was uncontroverted that M.L. was eleven years old at the time of the attack. The evidence was sufficient for a rational trier of fact to find the defendant guilty of rape of a child beyond a reasonable doubt.

## C. Especially Aggravated Kidnapping

Especially aggravated kidnapping is, *inter alia*, the knowing removal or confinement of a victim under age thirteen so as to interfere substantially with the victim's liberty. Tenn. Code Ann. §§ 39-13-302(a), -305(a)(2) (2003). M.L. testified that the defendant took her from her home, shoved her into his car, and drove her to a nearby church. From this evidence, a rational jury could conclude that the defendant committed the offense of especially aggravated kidnapping. The defendant's challenge to the sufficiency of the evidence supporting his convictions is without merit.

## II. Application of Enhancement Factors

The trial court applied the following enhancement factors to the defendant's sentences: the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;[3] the defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense; and at the time the felony was committed, the defendant was released on probation. See Tenn. Code Ann. § 40-35-114(1), (7), (9), (13) (2006). The defendant attacks the trial court's application of the latter

---

[3] The trial court applied this enhancement factor only to the offense of rape of a child.

three factors, arguing, as we understand, that under <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531 (2004), and <u>Cunningham v. California</u>, __ U.S. __, 127 S. Ct. 856 (2007), these factors may not be applied to the defendant's sentence because they were not found by the jury beyond a reasonable doubt. The State, while apparently conceding that these three factors were misapplied, argues that this court may not remand for resentencing on this basis. As we understand, the State contends that the 2005 amendments to our sentencing law limit our appellate review to whether:

> (1) The sentence was not imposed in accordance with this chapter [Tennessee Code Annotated chapter 40];

> (2) The sentence is excessive under the sentencing considerations set out in §§ 40-35-103 and 40-35-210; or

> (3) The sentence is inconsistent with the purposes of sentencing set out in §§ 40-35-102 and 40-35-103.

Tenn. Code Ann. § 40-35-401(b) (2006).

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. <u>State v. Butler</u>, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); <u>State v. Smith</u>, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); <u>State v. Bonestel</u>, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), <u>overruled on other grounds by</u> <u>State v. Hooper</u>, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); <u>State v. Taylor</u>, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). Enhancement factors may be considered only if they are "appropriate for the offense," and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114 (2006).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous. If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

We note initially that because the defendant did not raise this issue at his sentencing hearing or in his motion for new trial, he has waived plenary appellate review. State v. Gomez, 163 S.W.3d 632, 648-651 (Tenn. 2005), vacated on other grounds by Gomez v. Tennessee, __ U.S. __, 127 S. Ct. 1209 (2007). Even if we were to reach the merits of the defendant's claim, he would not be entitled to relief on this basis. This court considered a challenge to the application of enhancement factors under the 2005 amendments in State v. Devin Banks, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039 (Tenn. Crim. App. July 6, 2007), applic. for perm. to appeal filed (Tenn. July 17, 2007). There, we held that "error in the application of enhancement factors will not necessarily result in modification of the sentence if the trial court, in determining the specific sentence, considered the nature and characteristics of the crime, the character and background of the defendant, and that the imposed sentence is not inconsistent with the purposes of the Sentencing Act." Devin Banks, 2007 WL 1966039, at *48.

The trial court did not err in its application of the three challenged enhancement factors. The United States Supreme Court has held that judicial fact-finding runs afoul of the Sixth Amendment right to a jury trial only when it is mandatory. United States v. Booker, 543 U.S. 220, 259, 125 S. Ct. 738, 764 (2005) (construing the Federal Sentencing Guidelines). The 2005 amendments rendered the enhancement and mitigating factors advisory only; therefore their existence need not be proven to a jury beyond a reasonable doubt. This issue is without merit.

### III. Plain Error in Applying Presumptive Sentence to Rape of a Child and Especially Aggravated Kidnapping Convictions

Although not called to our attention by either party, we discern plain error elsewhere in the trial court's imposition of sentences for rape of a child and especially aggravated kidnapping. Both offenses are Class A felonies which carry a sentencing range of fifteen to twenty-five years for Range I offenders. It appears that the trial court imposed sentences for both by beginning at the midpoint of the statutory range and then applying relevant enhancement factors. This is inconsistent with our current sentencing law, which requires a trial court to consider as an advisory guideline that the minimum sentence within the range of punishment is the sentence that should be imposed, absent additional considerations. See Tenn. Code Ann. § 40-35-210(c)(1) (2006).

"When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. Crim. P. 52(b). In State v. Smith, 24 S.W.3d 274 (Tenn. 2000), our supreme court adopted the test for plain error first announced by this court in State v. Adkisson, 899 S.W.2d 626 (Tenn. Crim. App. 1994). In order for us to find plain error, Adkisson requires that "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" Smith, 24 S.W.3d at 282 (quoting Adkisson, 899 S.W.2d at 641-42).

All five Adkisson factors are present here. The record on appeal is clear. The trial court began with the minimum sentence on the aggravated burglary conviction, then said:

> Concerning the others, you start at the mid-range, which would be 20 years, and determine the enhancing factors. And as I've said, particularly, the prior criminal history shows a real problem with this particular defendant, and then the other enhancing factors also would . . . be used in this case.

> The Court finds that on both Class A's that he should be sentenced to the maximum within the range that's applicable to him, due to the enhancing factors and the lack of mitigating factors, be a 25 year sentence on each of those. His classification be 100 percent [sic].

Tennessee Code Annotated section 40-35-210(c) states that trial courts *shall* consider that the minimum sentence within the range of punishment is that which should be imposed. We recognize that because the guidelines set forth in section 40-35-210(c) are advisory only, the trial court was not required to impose the minimum sentence, even if it found no enhancement factors. However, it is apparent from the record that by beginning at the midpoint of the statutory range, the trial court did not appropriately consider the minimum sentence guideline, as was required.

As for the remaining Adkisson factors, this court has held that a defendant's right to be sentenced in accordance with the law in effect on the date the offense was committed is substantial. State v. Blackmon, 78 S.W.3d 322, 335-36 (Tenn. Crim. App. 2001). Because discovery of this error would likely have resulted only in a new sentencing hearing, we have no reason to believe that the defendant waived the error for tactical reasons. And where, as here, a substantial right of the accused has been adversely affected, consideration of the issue is necessary to prevent a miscarriage of justice. Adkisson, 899 S.W.2d at 643; see also State v. Ricky Lynn Payne, No. M2006-00762-CCA-R3-CD, 2007 WL 2042494, at *11-12 (Tenn. Crim. App. July 16, 2007) (where the defendant was not sentenced in accordance with the law in effect on the date the offense was committed, plain error review was appropriate).

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm all three of the defendant's convictions but remand to the trial court for resentencing as to the convictions for rape of a child and especially aggravated kidnapping.

_____
ALAN E. GLENN, JUDGE